**WINSTON BROS. COMPANY AND GREEN CONSTRUCTION COMPANY, a Joint Venture, Plaintiff,**

v.

**UNITED STATES of America, Interstate Commerce Commission, and Great Northern Railway Company, Defendants.**

Civ. No. 4-1067.

United States District Court
S. D. Iowa,
Central Division.

April 20, 1961.

Robert E. Dreher, Des Moines, Iowa, for plaintiff.

Roy W. Meadows, U. S. Atty., Des Moines, Iowa, for defendant, United States.

Leonard G. Goodman, Washington, D. C., for defendant, Interstate Commerce Comm.

Elmer B. Trousdale, St. Paul, Minn., and D. C. Shull, Sioux City, Iowa, for defendant, Great Northern R. Co.

STEPHENSON, District Judge.

This is an action brought under sections 1336, 1398, and 2321–2324 of Title 28 U.S.C. to set aside a report and order of the Interstate Commerce Commission of December 15, 1959, in its Docket No. 32565, titled Winston Bros. Company and Green Construction Company Joint Venture v. Great Northern Railway Company, and to remand plaintiff's request for reparation based upon an alleged unjust and unreasonable intrastate rate to the Commission for its determination.

The Commission's report and order by Division 3 determined that the Commission was without jurisdiction to make the requested findings concerning the justness and reasonableness of the assailed intrastate rate. Thus, the Commission determined that it was without jurisdiction to grant the relief requested by plaintiff and dismissed his complaint.

Plaintiff is a joint venture organized for the purpose of constructing a hydroelectric project in Montana. By complaint filed with the Commission on November 10, 1958, plaintiff alleged that the intrastate rate charged by the defendant Great Northern Railway on certain shipments of materials moved on and between November 2 and December 5, 1956, from Hardy, Montana to Cochrane Spur, Montana, was unjust and unreasonable in violation of Section 1(5) of the Interstate Commerce Act, 49 U.S.C.A. § 1(5). Plaintiff's only prayer for relief was a request for an order commanding the defendant railway herein to pay the plaintiff by way of reparation the sum of $15,-383.90. The complaint before the commission was assigned Docket No. 32565.

The shipments in issue moved in intrastate commerce under a rate of $1.67 (per net ton) which had been established pursuant to the Commission's order in Docket No. 31620, Montana Intrastate Freight

Rates and Charges, 297 I.C.C. 143 (1955). There the Commission found that the existing intrastate rates within Montana caused unjust discrimination against interstate commerce. The Commission required removal of this discrimination by establishing intrastate rates at a level which reflected the general increases as were or might be maintained by the several respondent railroads before it, including defendant Great Northern Railway. Those findings and conclusions, however, were without prejudice to the right of the State of Montana or any interested party to apply for modification of the order as to any specific intrastate rate.

The defendant railway herein petitioned the Commission on September 19, 1956, for modification of its order in the above Montana case. The defendant sought to establish a rate of $1.26 on this traffic to meet the competition of a combination rail-motor rate. The Commission authorized the establishment of the $1.26 rate in an order of November 20, 1956, on the basis of the representation that the specific intrastate rate did not affect interstate commerce. The reduced rate became effective on December 15, 1956.

Plaintiff's complaint before the Commission of November 10, 1958, was heard under the modified procedure prescribed by the Commission's General Rules of Practice on statements and affidavits of the parties. On July 23, 1959, the Hearing Examiner assigned to the proceeding issued his report proposing that the Commission find it was without jurisdiction to award the relief sought and that it dismiss the complaint. The Commission, Division 3, so found and dismissed the complaint by report and order of December 15, 1959. Following submission of plaintiff's petition for reconsideration and defendant Railway's reply, the full Commission in General Session denied reconsideration by an order of April 18, 1960.

Plaintiff's complaint in this Court was filed June 16, 1960. By stipulation of the parties filed November 18, 1960, it was agreed that jurisdiction and venue to hear and determine this cause is vested in this Court composed of a single judge; United States v. Interstate Commerce Commission, 1948, 337 U.S. 429, 69 S.Ct. 1410, 93 L.Ed. 1451; that the record made before the Commission when certified and received from the Secretary of the Commission may be filed forthwith by the plaintiff for the use of the court and the parties; and that such certified record shall constitute the evidence in this cause and all parties waive objection to it.

The sole question before the court is, does the Interstate Commerce Commission have statutory power to award reparations from an intrastate rate which it has prescribed under Sec. 13(4) of the Interstate Commerce Act, 49 U.S.C.A. § 13(4)? Related to this question is the issue whether the Commission, having found that the Montana rates, including the assailed rate of $1.67, "will not exceed a just and reasonable level," may later retroactively overturn that finding and hold that the rate was in fact unreasonable at the times these shipments moved.

In exercising its power to prescribe intrastate freight rates under Sec. 13(4) of the Act, as well as when it prescribes interstate rates, the Interstate Commerce Commission must find that the rates prescribed will not exceed just and reasonable levels, State of North Carolina v. United States, 1944, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760.

Pursuant to this requirement, the Commission, in prescribing Montana intrastate rates, including the assailed rate of $1.67 per ton, found (Montana Intrastate Freight Rates and Charges, 297 I.C.C. 143 (1955), at 158):

"The Montana intrastate rates and charges resulting from the increases herein approved will not exceed a just and reasonable level."

The authorities are uniform in holding that the Interstate Commerce Commission has no power to award reparations under these circumstances. In the

leading case of Arizona Grocery Co. v. Atchison, Topeka & S. F. Ry., 1932, 284 U.S. 370, 52 S.Ct. 183, 284 U.S. 370, the Commission had prescribed maximum rail rates on sugar from a number of points in California to Arizona. In compliance with the Commission's order and finding that those rates were just and reasonable, the carriers filed tariffs naming rates within the maxima prescribed. Subsequently, however, the Commission, on complaint of shippers, held the previously prescribed rates unreasonable and entered a reparations order. The Supreme Court held that the Commission had no power to order reparations, stating:

"Where the Commission has upon complaint, and after hearing, declared what is the maximum reasonable rate to be charged by a carrier, it may not at a later time, and upon the same or additional evidence as to the fact situation existing when its previous order was promulgated, by declaring its own finding as to reasonableness erroneous, subject a carrier which conformed thereto to the payment of reparation measured by what the Commission now holds it should have decided in the earlier proceeding to be a reasonable rate." (284 U.S. at page 390, 52 S.Ct. at page 186)

The Court pointed out that a prescribed rate is one which is made by the Commission in its legislative ratemaking capacity and cannot be made the basis for an award of reparations:

"Specific rates prescribed for the future take the place of the legal tariff rates theretofore in force by the voluntary action of the carriers, and themselves become the legal rates. As to such rates, there is therefore no difference between the legal or published tariff rate and the lawful rate. * * * The prescription of a maximum rate, or maximum and minimum rates, is as legislative in quality as the fixing of a specified rate. (284 U.S., at pages 387, 388, 52 S.Ct. at page 185)

"The Commission's error arose from a failure to recognize that, when it prescribed a maximum reasonable rate for the future, it was performing a legislative function, and that, when it was sitting to award reparation, it was sitting for a purpose judicial in its nature. In the second capacity * * * it was bound to recognize the validity of the rule of conduct prescribed by it, and not to repeal its own enactment with retroactive effect. It could repeal the order as it affected future action, and substitute a new rule of conduct as often as occasion might require, but this was obviously the limit of its power, as that of the Legislature itself." (284 U.S. at page 389, 52 S.Ct. at page 186)

In Atlantic Coast Line R. R. Co. v. Florida, 1935, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451, the Supreme Court expressly stated that the Commission is without jurisdiction to award reparations on intrastate rates established at a level prescribed by the Commission under section 13(4). In the Coast Line case, the Commission prescribed the intra-Florida rate level pursuant to its authority under section 13(4). The Commission's order on the first appeal was reversed for lack of findings but not before shipments were made in intrastate commerce at the rates in issue. On remand the Commission reset the rates at the originally prescribed level but attached adequate findings to its order. Thereafter, certain shippers filed a claim for restitution for the difference between the rates at the Commission-made level and the State-made rates on shipments moving prior to the decree setting aside the Commission's first order.

In reversing the District Court's award of restitution to the shippers, the Supreme Court stated (295 U.S. at pages 311–312, 55 S.Ct. at page 717):

"the substituted schedule is prospective only, and power has not been granted in such circumstances to give reparation for the past. * * * .

" \* \* \* The Commission was without power to give reparation for the injustice of the past \* \* \* "

The Court described this as the "established rule" which must govern claims for reparation in proceedings of this sort.

It is therefore ordered that plaintiff's complaint is hereby dismissed.